J-S23017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.T.E.L., JR. A/K/A M.L., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.L., FATHER | : : : : : : | |
| | : | No. 3839 EDA 2017 |

Appeal from the Order October 31, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0001119-2016,
CP-51-DP-0001360-2015

BEFORE: SHOGAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED JULY 23, 2018**

Appellant M.L. (Father)[1] appeals from the order involuntarily terminating the parental rights of Father to his minor, dependent son, M.T.E.L., Jr. (Child), born in June of 2010, pursuant to the Adoption Act,[2] 23 Pa.C.S. § 2511(a)(1), (2), and (b), and changing Child's permanency goal to adoption pursuant to the Juvenile Act,[3] 42 Pa.C.S. § 6351. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] By separate order entered on the same date, the trial court involuntarily terminated the parental rights of biological mother, S.T. (Mother). Mother is not a party to this appeal, and she did not file a separate appeal.

[2] 23 Pa.C.S. §§ 2101-2938.

[3] 42 Pa.C.S. §§ 6301-6375.

Father and Mother are not married. Father is not listed on Child's birth certificate. Father and Mother are also the biological parents of Child's younger sister, G.P.T., born in July of 2015.[4] Mother also has three other children M.T., born in October of 2004; C.T., born in January of 2014; and A.S.T., born in December of 2017, who are not Father's biological children.[5]

The Department of Human Services (DHS) became involved with Mother and the children on April 18, 2015, after receiving a General Protective Services (GPS) report that Mother and the children were dirty, unkempt, and malodorous. The report alleged that Mother has serious cognitive limitations impairing her parenting capabilities. The report also stated that Mother did not have stable housing.

On April 27, 2015, Community Umbrella Agency (CUA) began providing in-home services for Mother and the children. Mother, however, made no progress since: (1) she and the children remained unkempt; (2) she was unable to appropriately parent, discipline, and supervise the children; and (3) she failed to obtain adequate housing. On May 20, 2015, DHS obtained an Order of Protective Custody (OPC) for the children. Child was nearly five years old when he was removed from Mother and placed into foster care.

---

[4] G.P.T. was placed in foster care after she was born. Father voluntarily relinquished his parental rights to G.P.T. on June 30, 2017.

[5] Child's half-siblings, M.T., C.T., and A.S.T. are also in foster care, but are not part of this appeal.

On May 21, 2015, CUA held a single case plan (SCP) meeting. Father, who was known at the time, but whose whereabouts could not be determined, did not attend the SCP meeting. Father's only SCP objective was to make his whereabouts known to DHS or CUA. On May 22, 2015, a shelter care hearing was held for Child. The trial court lifted the OPC and ordered Child to remain in the custody of DHS. At the adjudication hearing on June 9, 2015, the trial court adjudicated Child dependent, and ordered continued foster care placement for Child through Bethanna.

Several permanency review hearings were held from 2015 until 2017. On November 21, 2016, DHS filed a petition to involuntarily terminate Mother's and Father's parental rights to Child and change Child's permanency goal to adoption. Father made his whereabouts known for the first time at a court hearing in January 2017.

On October 31, 2017, the trial court held a hearing on the petition. At the hearing, Child was represented by a guardian *ad litem* and a separate child advocate. DHS presented the testimony of Karen Johnson-White, the prior CUA case manager, and Ashley Burke, the current CUA case manager. Father, who was represented by counsel, testified on his own behalf. A summary of the testimony presented at the October 31, 2017 hearing follows.

Ms. Johnson-White testified that she was the initial CUA case manager when Child was removed from Mother's care and placed into foster care in April of 2015. N.T., 10/31/17, at 19. Ms. Johnson-White stated that Father

did not attend the first SCP meeting; however, Mother and Father's sister (Paternal Aunt), both attended. *Id.* at 26. Paternal Aunt informed her that Father was homeless. *Id.* Paternal Aunt and Mother were unable to provide an address or any type of information for Father. *Id.* Ms. Johnson-White stated that she was unable to notify or provide Father with a SCP plan because he was not at the meetings and she was unable to locate or contact him. *Id.* at 27.

Ms. Johnson-White testified that for the majority of the case's duration, Father's only SCP objective was to make his whereabouts known to her or DHS. *Id.* at 15. Ms. Johnson-White stated that "family-finding" was conducted in 2016 in an effort to find Father. Father was located sometime in mid-2016, and the family-finding worker provided him with Ms. Johnson-White's information and directed him to contact her. *Id.* at 16, 25. Ms. Johnson-White also received Appellant's phone number from the family-finding worker and called him twice, but Father failed to return her phone calls. *Id.* at 25. Ms. Johnson-White informed the court that she did not hear from Father until he showed up at the January 6, 2017 court proceeding, which was the first time any of the case workers assigned to this case had spoken or heard from him. *Id.* at 29. Ms. Johnson-White testified that she provided Father with two referrals to ARC, where Father could receive services, but ARC dismissed Father both times "because he would not engage." *Id.* Ms. Johnson-White stated that since Child has been in foster care, Father has

never visited or contacted Child, and he has never contacted DHS to try to provide for Child. *Id.* at 16.

Ms. Johnson-White also testified that Father has a criminal history and was incarcerated during the case. *Id.* at 16, 26. Ms. Johnson-White stated that Father is a registered sex offender under Megan's Law. *Id.* at 26. Ms. Johnson-White testified that as a registered sex offender, there is a special condition that he not have unsupervised contact with minors. *Id.* at 16.

With respect to Child, Ms. Johnson-White testified that Child never spoke to her about Father and did not mention Father in therapy. *Id.* at 20-21. Ms. Johnson-White stated that Child refers to Father by his first name. *Id.* at 21. Ms. Johnson-White concluded that Child did not have a meaningful parent-child relationship with Father. *Id.* at 22.

Ms. Johnson-White further testified that Child has been in a consistent foster home and was doing better with his behavioral issues. *Id.* Ms. Johnson-White stated that although Child did not understand adoption, Child expressed to her that he wishes to remain at his current foster placement and be adopted by his foster parents. *Id.* at 23. Ms. Johnson-White observed a parental bond between Child and his foster caregivers. *Id.* at 24.

Ms. Burke testified that she was the current CUA case manager since June of 2017. *Id.* at 34. Ms. Burke further testified that since she has been the case manager, Father has not been involved with CUA. *Id.* at 37. Ms. Burke stated that the only time she has interacted with him is when Father

attended an August 2017 court date. *Id.* Ms. Burke testified that she provided Father with her contact information at the last court listing so that he could update his information and provide proof of stable employment and adequate housing, but she never heard from him. *Id.* at 37-38. Ms. Burke also testified that Father has never visited Child or made any attempts to provide for Child since she has been the case manager. *Id.* at 37. Ms. Burke testified that Father was referred to ARC for appropriate services, but he was dropped due to his noncompliance. *Id.*

As to Child, Ms. Burke also testified that there was a lack of parent-child bond between Father and Child due to Father's failure to maintain a connection with Child throughout the life of the case and Father's failure to be involved in his treatment and daily care. *Id.* at 38. Ms. Burke stated that there would be no irreparable harm done to Child if Father's rights were terminated. *Id.* at 38-39. Ms. Burke concluded that it is in the best interest of Child to be adopted. *Id.* at 39.

Father, during his testimony, acknowledged that he pled guilty to indecent assault-forcible compulsion and indecent exposure and became subject to Megan's Law in 2009. *Id.* at 58-59. Father was sentenced to four years' probation on or about February 2015 for failure to register under the Sexual Offender Registration and Notification Act (SORNA). *Id.* Father admitted that since he was on Megan's Law, he could only have supervised visits with Child. *Id.* at 58.

Father testified that he could not read or write and had trouble remembering things and dates clearly. *Id.* at 45-46. Father claimed that Paternal Aunt informed him that Child was taken by DHS in 2015. *Id.* at 45, 56. Father admitted that over the two year period that Child was in foster care, his only efforts to find Child was a couple of phone calls to Mother. *Id.* at 56-57. Father further admitted that he did not visit Child. *Id.* at 50. According to Father, he wanted to see Child, but thought that there was nothing he could do. *Id.* at 50-51. Father claimed that if he were allowed to visit Child, he would have done so. *Id.* at 52.

Father testified that he lived at the same address since April of 2015. *Id.* at 46-47. Father claimed that he did not receive any letters or information about court dates, Child's status, or his SCP plan. *Id.* at 48. Father also testified that he returned Ms. Johnson-White's two phone calls, but got her voicemail both times. *Id.* at 47. Father stated that as soon as he received a letter about a court hearing for Child, he attended the hearing in 2017. *Id.* at 49. Father testified that since he became aware of the things that he was supposed to do for DHS concerning Child, he has tried to do them. Father also testified that he went to ARC and got a contact card, but when he tried to call, he never got an answer. *Id.* at 50.

Father testified that he was an active parent for the first year of Child's life. *Id.* at 44. Father stated that he would visit Child with Paternal Aunt at Mother's house and provide clothing for him. *Id.* at 43. Father further

testified that before April of 2015, he would see Child when Mother would bring him to her cousin's house. *Id.* at 54. Father testified that the last time he saw Child was either in 2014 or 2015, and Child called him "Daddy." *Id.* Father stated he enjoyed seeing Child and Child enjoyed seeing him. *Id.*

At the conclusion of the termination hearing, the trial court deemed the two case managers' testimony credible, and found them knowledgeable about Child, the history of the case, and Child's foster placement. *Id.* at 62. The trial court deemed Father not credible and placed no weight on his testimony. *Id.* The trial court found that Father did nothing to maintain his parental relationship with Child. *Id.* at 63. The trial court found Father's attempts at complying with or taking advantage of the services offered by the agencies were minimal or nonexistent. *Id.* The trial court opined that Child might have recognized Father, but Father has not served in the role as a father to Child since at least 2015. *Id.*

The trial court entered its orders involuntarily terminating Father's parental rights and changing Child's permanency goal to adoption on October 31, 2017. On November 28, 2017, Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a responsive opinion.

Father raises the following issue for our review.

1. Whether the trial court abused its discretion and erred as a matter of law in terminating Father's rights when petitioner failed to meet its burden that termination of parental rights

was warranted under 23 Pa.C.S. 2511(a) and the judge's decision was not supported by competent evidence?

Father's Brief at 7.[6]

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). "[I]f competent evidence supports the [trial] court's findings, we will affirm even if

---

[6] Father did not challenge the trial court's order changing Child's permanency goal to adoption in his concise statement of errors complained of on appeal or his appellate brief. Thus, this issue is waived. *See Krebs v. United Refining Co.*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal).

the record could also support the opposite result." ***In re Adoption of T.B.B.***, 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

Section 2511 of the Adoption Act controls the termination of parental rights, and requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting ***Matter of Adoption of Charles E.D.M. II***, 708 A.2d 88, 91 (Pa. 1998)).

In this case, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b). We have long held that in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we

analyze the trial court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first examine Father's claim that the trial court erred in terminating his parental rights under Section 2511(a)(2). Father contends that the trial court abused its discretion and erred as a matter of law in terminating his parental rights because there was no competent evidence to satisfy Section 2511(a)(2). Father's Brief at 10. Father claims that the trial court erred in

- 11 -

finding that Father did nothing to maintain his parental relationship with Child, and Father's attempts at complying or taking advantage of the services offered were minimal or nonexistent. *Id.* at 11.

In support, Father argues that the trial court's finding that his compliance is nonexistent is not supported by competent evidence considering that reasonable efforts were not made to assist Father in being compliant and successful in reunification. *Id.* Father points out that: (1) he was not properly and timely notified of the proceedings concerning Child, and he tried to do what he was supposed to do when he was finally contacted; (2) he was not given his SCP goals until after the petition to terminate was filed; (3) he is unable to read his SCP goals; (4) CUA never explained his SCP goals to him; and (5) his visitation was immediately suspended despite the fact that he was allowed supervised contact with Child. *Id.*

It is well settled that

In order to terminate parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental

duties." ***In re Adoption of C.D.R.***, 111 A.3d 1212, 1216 (Pa. Super. 2015) (quoting ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002)).

Further, this Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. ***In re A.L.D.***, 797 A.2d at 337. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. ***Id.*** at 340.

Instantly, the trial court concluded that the evidence is clear and convincing to terminate Father's parental rights pursuant to Section 2511(a)(2). Trial Ct. Op., 1/30/18, at 18. The trial court reasoned that Father cannot or will not be able to remedy the conditions that brought Child into supervision. ***Id.*** The trial court opined that it was not persuaded by Father's testimony that he will be able to fulfill his parental responsibilities in the future. ***Id.***

We conclude that Father's arguments regarding Section 2511(a)(2) essentially ask this Court to make credibility and weight determinations different from those of the trial court. The testimony of Ms. Johnson-White and Ms. Burke, which the trial court credited, clearly revealed that Father did not make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. ***See In re A.L.D.***, 797 A.2d at 337. Child has been in foster placement since approximately April of 2015, at which time he was nearly five years old. By the time of the termination hearing, Child had been

in foster placement approximately two years and five months, and is now seven years old. Over the duration of two years and five months, Father has been absent from Child's life as he has made no efforts to contact DHS to inquire about Child, provide essential care for him, or obtain supervised visitation. Although Father was referred to ARC for services, he did not follow through. Thus, Father did not engage in reasonable efforts to reunify with Child.

Accordingly, we find the competent evidence in the record supports termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) in that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused Child to be without essential parental care, control, or subsistence necessary for Child's physical or mental well-being. In addition, the evidence established that the causes of Father's incapacity, neglect, or refusal could not be remedied. Thus, the trial court did not abuse its discretion in terminating Father's parental rights under Section 2511(a)(2). *In re Adoption of S.P.*, 47 A.3d at 826-27.

To the extent, Father contends that DHS did not engage in reasonable efforts to help him reunify with Child, this argument warrants no relief. When reviewing a termination order on appeal, we do not consider whether DHS made reasonable efforts. Our Supreme Court has rejected the argument that the provision of reasonable efforts by the county children's services agency is a factor in termination of the parental rights. *See In the Interest of: D.C.D.*,

105 A.3d 662, 673-74, 676 (Pa. 2014) (rejecting the suggestion that an agency must provide reasonable efforts to enable a parent to reunify with a child prior to the termination of parental rights, and rejecting the suggestion that Section 2511 of the Adoption Act should be read in conjunction with Section 6351 of the Juvenile Act, particularly Section 6351(f)(9)(iii)).

We next consider Father's claim that the trial court erred in concluding that termination was appropriate under Section 2511(b). Father contends that the trial court erred in finding that the termination of his parental rights serves the best interests of Child. Father's Brief at 17. Father argues that the evidence does not support his absence of a bond with Child. *Id.* at 19. Father claims that he was not in Child's life after Child was placed in foster care because: (1) he was not allowed visitation; (2) he was not properly contacted or located; (3) he is illiterate; and (4) he did not understand what he was supposed to do when he was contacted. *Id.* Father claims that his diminished parental bond with Child should not be held against him when it was through no fault of his own and he made his best efforts under the circumstances considering the limitations caused by the efforts of CUA, the court, and his own illiteracy. *Id.*

At the outset, we note that issues not raised in a Rule 1925(b) statement will generally be deemed waived. *Krebs*, 893 A.2d at 797; *Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) (quoting *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998)). Rule 1925 waiver standards apply in the

family law context. *See In re L.M.*, 923 A.2d 505 (Pa. Super. 2007) (applying *Lord* standard to appeal from order terminating parental rights); *In re C.P.*, 901 A.2d 516 (Pa. Super. 2006); *In re C.M.*, 882 A.2d 507 (Pa. Super. 2005). Moreover, the failure to preserve a claim challenging the best interests of the Child under Section 2511(b) has been held to result in waiver. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 & n.3 (Pa. Super. 2017) (finding waiver of an appellant's challenge under Section 2511(b) for failure to preserve that issue in a Rule 1925(b) statement and include it in the statement of questions involved). *But see In re C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) (addressing the best interests of the child under Section 2511(b) *sua sponte*).

Here, Father discussed the best interests of Child under Section 2511(b) in his appellate brief, but failed to raise a Section 2511(b) claim in his Rule 1925(b) statement or include the issue in his statement of questions involved. Father's Brief at 17-20. Therefore, we are constrained to conclude that this claim is waived. *See In re M.Z.T.M.W.*, 163 A.3d at 466. Nevertheless, for the reasons that follow, we discern no merit to his claim. *See In re C.L.G.*, 956 A.2d at 1009.

Our Supreme Court recently stated as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In *In re E.M.*, [620 A.2d 481,

485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (some citations omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

Here, the trial court found Father's testimony regarding his relationship with Child prior to the time he entered foster care was not credible and afforded no weight to his testimony. Trial Ct. Op., 1/30/18, at 20. The trial court found that Ms. Johnson-White and Ms. Burke presented credible testimony regarding Father's absence in Child's life, as well as Child's needs and best interests. *Id.* The trial court noted that Child came into foster care when he was almost five years old. *Id.* The trial court further noted that Father is a registered Megan's Law Offender and may not have unsupervised contact with any children including Child. *Id.* The trial court concluded that

terminating Father's parental rights best serves Child's physical and emotional needs and welfare under Section 2511(b). *Id.*

At the hearing, the trial court also concluded that there is no parental bond between Child and Father. *Id.* at 63. The trial court found that Child may recognize and know who Father is, but Father is not a father-figure to Child. *Id.* The trial court determined that Father has not been a father to Child since at least 2015. *Id.* The trial court thus concluded that it was in the best interest of Child to be adopted. *Id.* at 63.

Based on the totality of the record evidence, we discern no abuse of discretion or legal error by the trial court in concluding that termination of Father's parental rights would best serve Child's interest. The trial court thoroughly considered Child's bond with Father and the effect of severing that bond. The record supports the trial court's determination that there is no bond or substantial relationship between Child and Father that, if severed, would detrimentally affect Child. The evidence also establishes Child's desire to remain at his current foster home where he has consistency and permanency. As such, the trial court correctly prioritized Child's emotional well-being and his need for safety, permanency, and stability over Father's wishes.

While Father may profess to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d at 1121. As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle

- 18 -

the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re C.L.G.*, 956 A.2d at 1007. As there was competent evidence in the record that supported the trial court's findings and credibility determinations, we find no abuse of the trial court's discretion in terminating Father's parental rights to Child under Section 2511(b). *In re Adoption of S.P.*, 47 A.3d at 826-27.

In sum, we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights pursuant to Sections 2511(a)(2) and (b), and we affirm the order of the trial court.

Order affirmed.

P.J.E. Stevens joins the memorandum.

Judge Shogan files a concurring & dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/23/18

- 19 -